## HILL vs. KING.

*Eleventh District Court for Placer Co., April T.,* 1858.

WATER COURSES—MINING DITCHES—PRIOR APPROPRIATION.

*A.* appropriated the waters of a certain stream, by turning them into his ditches, and
through them, into his reservoirs. *B.* located above *A.*, and emptied the waters of
a *different stream*, mixed with large quantities of earth and sediment, into that ap-
propriated by *A.* By reason of this *A.* suffered damage in being put to expense to
clean out his ditches—in obtaining a decreased supply of water—and by loss of
custom arising from its deteriorated quality. *A.* brought this action against *B.*,
to recover damages for the said injury.

*Held,* That *A.* had a right to recover.

This was an action to recover damages for the injury of water, caus-
ed by the mixing of dirt and soil in the water, by using it for mining
purposes. The cause was tried by the court, who found the following
as the facts of the case, from the pleadings and evidence.

From December 1, 1855, plaintiff's intestate, was the owner of two
water ditches, leading from "Indian Cañon" to Bird's Flat, and other
mining localities, which ditches were constructed in 1852, to convey
the water of said cañon to said localities, for mining purposes.

The defendants are owners of certain mining claims in Indian Cañon,
and from the 1st day of December, 1855, to the commencement of
this suit, they have washed and sluiced off from their mining claims
large quantities of soil and gravel, into the bed of Indian Cañon, at a
point about 320 rods above the heads of plaintiff's ditches, by means
of water used in their mining operations, brought by them from another
stream, not connected with the waters of Indian Cañon. This causes
material injury to the plaintiffs, by thoroughly impregnating the water
of Indian Cañon with dirt and sediment, which is immediately washed
down in large quantities into the plaintiff's ditches, and being deposit-
ed in them, materially obstructs the flow of water through them, and
materially reduces their capacity for the conveyance of water. In
consequence of this muddying of the water, plaintiff's customers have
also withdrawn their patronage, which has greatly reduced the receipts
from the sales of water. Plaintiff is also compelled to incur great ex-

22

pense in clearing the mud and sediment from the ditches and reservoirs, nearly equalling the entire receipts. Such muddy water also flows in ditches with the usual grade with much less rapidity than clear water.

Defendant's claims could have been worked by tunneling and drifting, without the necessity of sluicing or washing off a large portion of the soil which has been washed down by the mode pursued by the defendants ; but such way of working the claims would have involved a a much greater expense, and such expense would nearly equal the profits, while by working them as defendants have done, they have realized a large profit on the labor and capital expended. If the claims had been worked by tunnels and drifts, very little injury would have resulted to the plaintiff.

The court found that the plaintiff had been damaged as follows : On account of mud, sediment, &c., deposited in his ditches, $883 ; on account of the flow of the water in the ditches being impeded, thereby depriving the plaintiff of as large a supply as would otherwise have flowed through the ditches, $225 ; on account of the decreased value at which plaintiff was compelled to sell water, in consequence of the mud and sediment with which it was mixed, $100.

The names of counsel have not been furnished.

HOWELL, J.—This case has been once appealed to the supreme court, where the judgment of the court below was reversed, and the cause remanded. *Hill* v. *King*, 7 *Cal.*, July T. Subsequently a rehearing was granted, and the doctrine as laid down by the late chief justice, that the prior appropriator of the waters of a stream is entitled to their " exclusive use, pure and undiminished," as they were at the time of their appropriation, was modified so as to conform to the rules established in the case of the *Bear River, &c., Mining Co.* v. *York Mining Co.*, 7 *Cal.*, Oct. T. In the latter case plaintiffs made the first location on the stream, and subsequently the defendants diverted a part of the waters of the same stream at a point above, mixed with them large quantities of soil and other foreign substances, and in this adulterated state turned them back into the stream again, before they

reached the head of plaintiff's ditch.  Justice BURNETT, in delivering the opinion of the court in that case, says that, " after the most careful and anxious consideration of this most difficult subject, the following conclusions occur to me as the most practicable approach to a fair and equitable adjustment of this matter.  1st. The ditch owner is entitled to have the water flow without material interruption in its natural channel.  This right would seem to be compatible in general with the fair use of the water.  2d. He is entitled to the water so undiminished in quantity as to leave sufficient to fill his ditch as it existed at the time the locations were made above.  This right is essential to the protection of the ditch owner.  If we lay down the rule that the subsequent locator above may use the water so as to diminish the quantity, it would be difficult to set any particular limits to such diminution, and ditch property might be rendered entirely worthless.  As the water cannot be absorbed or evaporated but once, the ditch owner should be entitled to its exclusive use in such case.  3d. And as to the deterioration in quality, the injury should be considered as an injury *without consequent* damage."

The facts of that case were precisely the same as in this in regard to the adulteration of the water, with this exception.  In the *Bear River* case, the water was taken out of the stream on which plaintiff's ditch was located, deteriorated, and then returned before reaching the head of plaintiff's ditch.  Here it is brought from a different stream from the one on which plaintiff's ditch is located, and these foreign waters, in their adulterated state, are poured into Indian Cañon, and are thence carried into plaintiff's ditches and reservoirs. Is there any difference in principle between the two cases ?  In the *Bear River* case, the court has treated the right to use the water of the streams on the public lands, as a *bounty* from the government to her citizens, and was governed, it seems, in arriving at its conclusions, by a disposition, or rather desire, to distribute this bounty in such a way as to benefit the greatest number of persons, and thereby develope, as rapidly as possible, the resources of the mineral region.  And " keeping this position in view," they proceed " to examine the questions in the case."  If these considerations have governed the supreme court in adjudicating

such questions, then the district courts are equally free to exercise their judgment in cases where the facts are different. In all the decisions upon questions involving the right to use the water of streams in the mining districts, the supreme court has been careful to preserve the rights of the first appropriator, so far as their exercise may be in accordance with the protection and encouragement of others. The greatest innovation upon the prior rights of ditch owners made in the *Bear River* case, and I am not disposed to carry the doctrine further than was done in that case, for in my judgment it will be found that the rule, that the adulteration of the water is *damnum absque injuria*, as broadly as it is there laid down, will have to be modified.

One of the chief reasons that operated upon the court, in holding that the prior locator was not entitled to have the water flow in its pure state, as it was wont at the time of the location of his ditch, and that the adulteration was an injury without consequent damage, was the consequences that would flow from such a rule. For the court very justly remarks, that if a rule of this kind were established, the ditch owner who takes from a stream one tenth of its volume, could prevent all others subsequently locating above him from using the other nine tenths, for the reason, that in doing so the whole body would become adulterated. But these consequences do not necessarily follow in a case like the one at bar. The defendants are adulterating the waters of another and entirely distinct stream, and the only necessity that grows out of their use, is in finding a place to discharge them. And if the plaintiff's rights must yield to this necessity, why not allow the defendant, if it should prove more convenient, to discharge them directly into plaintiff's ditches and reservoirs ? In my judgment the reasoning of the court in the *Bear River* case, and the principles upon which its judgment is founded, are inapplicable in this. It may be that parties occupying the position of the defendants, will sometimes find it inconvenient to get rid of the water after it has been used; but these considerations will not justify the courts in the establishment of a rule that would prove utterly destructive of the rights of other parties, who are equally entitled to their protection.

For the above reasons I am of the opinion that the injuries resulting

from the acts of the defendants are not *damnum absque injuria*, but that the plaintiff is entitled to recover the damages as found by the court.

Let judgment be entered accordingly, and for costs.